1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11
GIFFORD PINCHOT TASK FORCE, a
Washington non-profit corporation,

12
                        Plaintiff,

13
            v.

14
JANINE CLAYTON, in her official
capacity as Forest Supervisor of Gifford

15
Pinchot National Forest, and the UNITED
STATES FOREST SERVICE, a federal

16
agency,

17
                        Defendants.

CASE NO. C10-5181 JRB

ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

18

19
        This matter comes before the Court on cross-motions for summary judgment. The parties

20
agreement that the Court's resolution of the motions constitutes a final ruling on this appeal from

21
an administrative proceeding. The Court has heard oral argument and considered the pleadings

22
filed in support of and in opposition to the cross-motions and the file herein.

23

24
ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT- 1

1

2                        **INTRODUCTION AND BACKGROUND**

3          This is an action challenging the Forest Service's planned forest-thinning project

4   (Wildcat Thin Project) in the Muddy River and Swift Reservoir watersheds in the Gifford

5   Pinchot National Forest (GNPF).  Plaintiff, Gifford Pinchot Task Force challenges the Forest

6   Service's Decision Notice (DN) and Finding of No Significant Impact (FONSI) as arbitrary and

7   capricious.  Plaintiff alleges violations of the National Environmental Policy Act (NEPA), the

8   National Forest Management Act (NFMA) and the Administrative Procedure Act (APA).  Both

9   Plaintiff and Defendants move for summary judgment.

10         The Wildcat Thin Project on the GPNF is designed to thin tree plantations planted in the

11  1960s and 1970s following clearcutting in the Muddy River and Swift Reservoir watersheds.

12  This thinning of dense, even-aged stands will allow for the remaining trees to grow and mature

13  without competition.  Administrative Record (AR) 8221-67.  The Project also addresses three

14  other needs within the area: headwater tributary enhancement, road decommissioning and

15  removal of old, temporary road stream crossings. Id.  The Project will occur within the GPNF's

16  Matrix allocation, which pursuant to the Northwest Forest Plan (NWP) are lands managed for the

17  continued production and utilization of forest resources, principally timber.  AR 7986; 2167.

18  The Project will also include the restoration of late-successional components (large multi-species

19  trees, variable tree densities, snags and downed coarse wood) in Late Successional Reserves

20  (LSRs) and Riparian Reserves (RRs).  AR 7986-89; 2166-67.  The Project includes thinning on

21  2,694 acres of forest plantations, commercial salvage on 11 acres of plantation affected by

22  blowdown, and non-commercial treatment on 17 acres of stands.  AR 8221-23; 7983.  Small tree

23  thinning would also occur within the clearing limits for Forest Road 2500.  Id.  The Project also

24

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT- 2

1    includes an amendment to the GPNF Land and Resource Management Plan (GPNF Forest Plan)

2    allowing for use of feller bunchers (a type of tractor harvest equipment) on slopes up to 45

3    percent within the Project units.  AR 8224-26.

4          In consultation with the U.S. Fish and Wildlife Service (USFWS) and the National

5    Oceanic and Atmospheric Administration (NOAA) Fisheries, the Forest Service completed

6    Biological Assessments (BAs) for fisheries and wildlife, including bull trout and northern

7    spotted owl.  AR 7587-7613; 7616-7715.

8          In December 2008, the Forest Service requested scoping comments on the Project.  AR

9    7326-29.  Comments were received from various interested parties, including from Plaintiff.  AR

10   7478-87.  In April 2009, the Forest Service published notice of the release of the preliminary

11   Environmental Analysis (EA) for a 30-day public comment period.  AR 7775; 7772-73.  The

12   preliminary EA summarized specific actions of the proposed action, and described the proposed

13   site-specific Forest Plan Amendment.  The Forest Service received comments on the Preliminary

14   EA from various interested parties including from Plaintiff.  AR 7783-92.

15         The Forest Service received a memo in May 2009 from the USFWS recommending

16   northern spotted owl limited operating periods for the Wildcat Thin Timber Sale.  AR 7805-07.

17   In July 2009, the Forest Service received a Biological Opinion and letter of concurrence from the

18   USFWS for the effects to bull trout, northern spotted owls, and designated northern spotted owl

19   critical habitat from the Project's proposed action,  AR 7867-7965, which included northern

20   spotted owl limited operating periods.  NOAA Fisheries provided a Biological Opinion, which

21   concluded that the Project was not likely to jeopardize the continued existence of Lower

22   Columbia River coho salmon.  AR 8168-8215.

23         The Wildcat Thin Timber Sale EA was completed on August 1, 2009.  AR 7978-8167.  A

24

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT- 3

1  DN/FONSI and Site Specific Forest Plan Amendment were issued on August 26, 2009, by Janine

2  Clayton, the GPNF Forest Supervisor.  AR 8221-67; 8268-73.  Plaintiff filed an appeal of the

3  DN/FONSI on October 9, 2009.  AR 8274-8302.  In November 2009, the Deputy Regional

4  Forester affirmed the Decision on the Project. AR 8334; 8317-33.  This litigation followed.

5  Plaintiff challenges the Forest Service Decision Notice and Finding of No Significant for the

6  Wildcat Thin Timber Sale Project as arbitrary and capricious.  The parties have filed cross-

7  motions for summary judgment.

8                           **SUMMARY JUDGMENT STANDARDS**

9         Summary judgment is proper only if the pleadings, the discovery and disclosure materials

10  on file, and any affidavits show that there is no genuine issue as to any material fact and that the

11  movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party is

12  entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

13  showing on an essential element of a claim in the case on which the nonmoving party has the

14  burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

15  of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

16  for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586

17  (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

18  metaphysical doubt.").  See also Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a

19  material fact exists if there is sufficient evidence supporting the claimed factual dispute,

20  requiring a judge or jury to resolve the differing versions of the truth.  Anderson v. Liberty

21  Lobby, Inc., 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

22  *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

23

24
    ORDER GRANTING DEFENDANTS' MOTION
    FOR SUMMARY JUDGMENT AND DENYING
    PLAINTIFF'S MOTION FOR SUMMARY
    JUDGMENT- 4

1    The determination of the existence of a material fact is often a close question.  The court

2    must resolve any factual issues of controversy in favor of the nonmoving party only when the

3    facts specifically attested by that party contradict facts specifically attested by the moving party.

4    The nonmoving party may not merely state that it will discredit the moving party's evidence at

5    trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W. Elect.*

6    *Service Inc*., 809 F.2d at 630.  Conclusory, non specific statements in affidavits are not

7    sufficient, and "missing facts" will not be "presumed."  *Lujan v. National Wildlife Federation*,

8    497 U.S. 871, 888-89 (1990).

9                                    **GOVERNING STATUTES**

10          **National Environmental Policy Act**

11          NEPA requires an agency to prepare an EIS when it proposes "major federal actions

12    significantly affecting the quality of the environment."  42 U.S.C. § 4332(C).  NEPA is designed

13    to insure that the agency has fully contemplated the environmental effects of its action, and "to

14    insure that the public has sufficient information to challenge the agency."  *Robertson v. Methow*

15    *Valley Citizens*, 490 U.S. 332, 349 (1989).  As a preliminary step, an agency may prepare an EA

16    to decide whether the environmental impact of a proposed action is significant enough to warrant

17    preparation of an EIS.  *Blue Mts. Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1212 (9th

18    Cir. 1998).  The purpose of an EA is to provide the agency with sufficient evidence and analysis

19    for determining whether to prepare an EIS or to issue a FONSI.  *Metcalf v. Daley*, 214 F.3d

20    1135, 14 1143 (9th Cir. 2000).  If an EA establishes that an action may have a significant effect

21    on the environment, then an EIS must be prepared.  *Blue Mountains*, at 1212.  If not, then the

22    agency issues a FONSI.  *Id*.  The FONSI must be accompanied by a convincing statement of

23    reasons to explain why a project's impacts are insignificant.  *Id*.

24

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT- 5

1    In reviewing a challenge to the adequacy of an EA, the court applies a "rule of reason" to

2    determine whether the agency took a "hard look" at a proposed action by preparing a

3    "reasonably thorough discussion of the significant aspects of probable environmental

4    consequences." *Kern v. U.S. Bureau of Land Mgmt.*, 284 F.3d 1062, 1071 (9th Cir. 2002).

5    Courts are not to substitute their judgment for that of the agency. *League of Wilderness*

6    *Defenders v. Allen*, 615 F.2d 1112, 1130 (9th Cir. 2010). NEPA dictates that the courts defer to

7    agency opinion if it is not otherwise shown to be arbitrary and capricious. *City of Carmel-by-the-*

8    *Sea v. U.S. Dep't of Transp.*, 123 F.3d 1142, 1151-52 (9th Cir. 1997).

9    **National Forest Management Act**

10    NFMA mandates forest planning through the thorough analysis of environmental

11    economic impacts, coordination of multiple use and sustained yield, and public participation in

12    the development of the program. 16 U.S.C. § 1600. The agency is required to develop

13    comprehensive land and resource management plans (LRMP) for each unit of the National

14    Forest system. 16 U.S.C § 1604(a).

15    All management activities undertaken by the Forest Service must comply with the forest

16    plan, which in turn must comply with the Forest Act, which requires that wildlife habitat must be

17    managed to maintain viable populations of native and desired non-native wildlife species. In

18    order to ensure compliance with the forest plan and the Forest Act, the Forest Service must

19    conduct an analysis of each "site specific" action, such as a timber sale, to ensure that the action

20    is consistent with the forest plan. *Idaho Sporting Congress, Inc. v. Rittenhouse*, 305 F.3d 957,

21    962 (9th Cir. 2005).

22    Review of agency decision-making under NFMA is governed by the judicial review

23    provisions of the APA. *Native Ecosystems Council v. U.S. Forest Service*, 418 F.3d 953, 960

24    ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT- 6

1  (9th Cir. 2005); *Gifford Pinchot Task Force v. U.S. Fish and Wildlife Service*, 378 F.3d 1059,

2  1065 (9th Cir. 2004).

3  **Administrative Procedure Act**

4  Judicial review of a NEPA or NFMA claim is governed by the APA, 5 U.S.C. §§ 701-06;

5  *Native Ecosystems Council v. U.S. Forest Service*, 418 F.3d 953, 960 (9th Cir. 2005); *Lujan v.*

6  *Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990).  Under the APA, the court may set aside agency

7  action only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

8  with law."  *Native Ecosystems Council,* at 960; *Wilderness Soc'y v. U.S. Fish & Wildlife Serv.,*

9  353 F.3d 1051, 1059 (9th Cir.2003).  To have not acted in an arbitrary and capricious manner,

10  the agency must present a rational connection between the facts found and the conclusions made.

11  *Native Ecosystems Council,* at 960; *Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs*, 384 F.3d

12  1163, 1170 (9th Cir. 2004).  Agencies are entitled to deference to their interpretation of their own

13  regulations, including Forest Plans.  *Native Ecosystems Council,* at 960; *Forest Guardians v.*

14  *U.S. Forest Serv.*, 329 F.3d 1089, 1097, 1099 (9th Cir.2003).  A court is only to assess whether

15  the agency's decision is "within the bounds of reasoned decisionmaking,"  *Balt. Gas & Elec. Co.*

16  *v. Natural Res. Def. Council*, 462 U.S. 87, 105 (1983).

17  **ANALYSIS**

18  **NEPA COMPLIANCE**

19  The Gifford Pinchot Task Force claims the Forest Service violated NEPA by failing to

20  prepare an EIS.  Plaintiff asserts that the Project will have a significant effect on the

21  environment, poses unique or unknown risks, and that the mitigation measures do not render the

22  Project insignificant.

23

24  ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT- 7

1

**Unique and Unknown Risks**

2      Plaintiff's primary objection appears to be that the Forest Service did not adequately

3  address sediment increases in the area waterways resulting from the Project.  The Court rejects

4  this contention.  The Forest Service determined in its expertise, and based on previous studies

5  and observations, to model sediment production and to qualitatively describe the sediment

6  delivered to waterways to disclose effects of the Project. See AR 8049-53.  The Forest Service

7  created a reasonable methodology to test sediment loads and evaluate the impacts.

8      The Forest Service has analyzed and disclosed the relevant data regarding potential

9  impacts of the Project on the area. See AR 8035-36, 8039-40 (effects on soil productivity); 8055-

10  56, 8060-67 (effects on hydrology, stream sediment and water temperature); 8078-82

11  (effects to fisheries and fish habitat); 8089-93 (effects to LSRs); 8098-8108 (effects on

12  threatened and endangered plant species); 8118-23 (effects to northern spotted owl); 8125-29

13  (effects on wildlife); 8132-33 (effects to management indicator species); 8143-44 (effects on

14  scenery); 8148 (effects on heritage resources). The Forest Service has articulated proposals

15  to mitigate these effects.  See AR 8015 (no skidding permitted across any streams); 8015-16

16  (temporary road stream crossing structures will be designed to comply with standards and

17  guidelines for permanent structures to accommodate high winter flows); 8016 (catchments will

18  be constructed to intercept runoff from landings prior to reaching streams); 8021 (describing

19  mitigation measures for feller buncher operations); 8020 (following completion of the Project,

20  temporary roads will have all temporary crossing removed); id. (temporary landings will be

21  subsoiled to a depth of 18 inches, creating a rough, uneven surface); 8021 (areas of gouging or

22  soil displacement will be treated); id. (sediment captured in catchments will be cleaned and

23  deposited on the forest floor away from streams); Id. (describing monitoring during the Project).

24

1    The EA provides the necessary convincing statement of reasons why the Project's

2    impacts are not significant.  The Project does not present unique or unknown risks, nor will it

3    have significant effects on the environment. The Agency properly relies on mitigation measures

4    and a properly prepared EA.

5                              **Cumulative Impacts**

6    The Gifford Pinchot Task Force next contends the Forest Service failed to appropriately

7    disclose and analyze cumulative impacts.  The Court disagrees.  The EA contains a discussion of

8    the cumulative impacts of the Project combined with other past, present, and reasonably

9    foreseeable future projects in the area.  See AR 8025-26; 8035; 8039; 8061.  The Forest Service

10   adequately disclosed foreseeable future activities on public and private lands.  The EA also

11   adequately analyzed the cumulative effects of roadbuilding and effects on the area watersheds.

12   See AR 8026-39; 8045-81.  The EA adequately analyzes the effects of the Project and Plaintiff

13   has not shown otherwise.

14                             **Range of Alternatives**

15   The Gifford Pinchot Task Force next contends the Forest Service failed to analyze an

16   adequate range of alternatives.  Plaintiff has failed to support this contention.  The EA

17   establishes that the Forest Service analyzed an adequate range of alternatives.  See AR 7793-94;

18   7995; 8227-28; 8322-24.

19   **NFMA COMPLIANCE**

20   Plaintiff argues that the Forest Service violated both NEPA and NFMA because it failed

21   to provide enough detailed analytical data to show that it met either NEPA's procedural

22   requirements or NFMA's substantive requirements.

23

24
ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT- 9

1                           **Impacts on Late Successional and Riparian Reserves**

2 Contrary to Plaintiff's allegations, the EA shows that the Forest Service met NEPA's procedural

3 obligations and took the required "hard look" at the impacts of the Project on Late Successional

4 Reserves (LSRs) and Riparian Reserves (RRs) and complied with the substantive requirements

5 set forth in the Forest Plan. See AR 2166; 4233; 4324; 4364-67; 7986-87; 8007.  The EA

6 analyzes the circumstances under which timber harvest activities may proceed in LSRs, the

7 impacts on RRs, balances the costs of the Project against the benefits, and concludes that the

8 Project meets the appropriate criteria.

9                                    **Impacts on Soil**

10       The Forest Service adequately demonstrated the impacts to soils in compliance with the

11 NFMA.  See AR 7763-65; 8005; 8078-79.  The EA contains a discussion of soil productivity,

12 including a description of current conditions, and potential effects from the Project on loss of

13 organic matter. AR 7749, 8034.

14                           **Aquatic Conservation Strategy**

15       The EA also complies with the Forest Plan Aquatic Conservation Strategy (ACS).  To

16 comply with the ACS, the Agency must include a description of: (1) the existing condition; (2)

17 the range of natural variability of the important physical and biological components of a given

18 watershed; and (3) how the proposed project maintains the existing condition or moves it within

19 the range of natural variability. AR 4327.  The EA contains a thorough discussion of the

20 Project's consistency with ACS objectives. See AR 8068-73.  Plaintiff has not demonstrated that

21 the Forest Service's analysis is deficient.

22       Plaintiff has failed to demonstrate the forest Service made a clear error of judgment in

23 determining the Project conforms with the National Forest Plan.  The Forest Service fully

24

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT- 10

1    complied with its obligations under the NFMA.  The EA provides a comprehensive explanation

2    for its decision backed up with the best scientific information available.  Plaintiff has not shown

3    otherwise.

4            **FOREST PLAN AMENDMENT**

5            The NFMA provides that the Forest Service may modify a forest plan "in any manner

6    whatsoever."  16 U.S.C. § 1604(f)(4).  NFMA's implementing regulations provide that "[i]f the

7    change resulting from the amendment is determined not to be significant for the purposes of the

8    planning process, the Forest Supervisor may implement the amendment following the

9    appropriate public notification and satisfactory completion of NEPA procedures."  36 C.F.R. §

10   219.10(f) (2000). See also 36 C.F.R. 219.35(b) (2010).  The Forest Service demonstrated in the

11   EA that an amendment to the GPNF Forest Plan allowing the use of feller-buncher equipment in

12   advance of log removal on slopes up to 45% was necessary and appropriate.  See AR 8015-17;

13   8040-41; 8224-26.  Plaintiff has failed to demonstrate otherwise.

14                            **CONCLUSION**

15           The Court, having heard oral argument, considered the motions, the responses, replies,

16   and the relevant documents herein, finds there are no genuine issues of material fact, and the

17   Defendants United States Forest Service and Janine Clayton are entitled to judgment as a matter

18   of law.  An EIS is not required here.

19

20

21

22

23

24
ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT- 11

1    Therefore, it is hereby **ORDERED** that**:**

2    Plaintiff's Motion Summary for Judgment (Dkt. 20 & 21) is **DENIED.**

3    Defendants**'** Cross-Motion for Summary Judgment (Dkt. 26) is **GRANTED**.  Plaintiff's

4    action is **DISMISSED with PREJUDICE**.

5    Dated this 7th day of March, 2011.

6

7

8    ROBERT J. BRYAN
     United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
     ORDER GRANTING DEFENDANTS' MOTION
     FOR SUMMARY JUDGMENT AND DENYING
     PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT- 12